UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| CLARENCE D. SCHREANE, ) | |
| ) | |
| *Plaintiff*, ) | |
| v. ) | No. 1:12-cv-323 |
| ) | *Judge Mattice* |
| ASSISTANT DISTRICT ATTORNEY ) | |
| BOYDE PATTERSON, OFFICER MIKE ) | |
| MATHIS, In Both Their Individual and ) | |
| Official Capacities, ) | |
| ) | |
| *Defendants.* ) | |

**MEMORANDUM**

Plaintiff Clarence D. Schreane ("Plaintiff") has filed a *pro se* prisoner's civil rights complaint filed under 42 U.S.C. § 1983 and an application to proceed *in forma pauperis* (Docs. 1 & 1-2). This action stems from Plaintiff's criminal convictions by a Hamilton County Criminal Court jury for first degree felony murder and especially aggravated robbery. Plaintiff claims Defendants violated his federal constitutional rights by suppressing material evidence and committing perjury during the course of his criminal prosecution.

For the reasons set forth herein, no service shall issue, and this complaint will be *sua sponte* **DISMISSED WITHOUT PREJUDICE** (Doc. 1). In addition, Plaintiff's motion to proceed *in forma pauperis* will be **GRANTED IN PART** and **DENIED IN PART** (Doc. 1-2).

**I. APPLICATION TO PROCEED *IN FORMA PAUPERIS***

It appears from the application to proceed *in forma pauperis* submitted by Plaintiff that he lacks sufficient financial resources at the present time to pay the

required filing fee of $350.00. Therefore, Plaintiff's motion to proceed *in forma pauperis* will be **GRANTED IN PART** and **DENIED IN PART** (Doc. 1-2). Plaintiff's motion to proceed *in forma pauperis* will be **GRANTED** to the extent Plaintiff can file his complaint without the prepayment of the full filing fee but **DENIED** to the extent the filing fee will not be waived. Therefore, Plaintiff is not relieved of the ultimate responsibility of paying the $350.00 filing fee, but rather, will be **ASSESSED** the entire filing fee and permitted to pay it in installments in accordance with the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 28 U.S.C. § 1915(b)(1); *see McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *abrogated on other grounds, Jones v. Bock*, 549 U.S. 199, 205 (2007).

Pursuant to 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of Plaintiff's inmate trust account at the institution where he now resides shall submit to the Clerk, United States District Court, 900 Georgia Ave., Room 309 Chattanooga, Tennessee 37402, as an initial partial payment, whichever is the greater of

(a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or

(b) twenty percent (20%) of the average monthly balance in Plaintiff's inmate trust account for the six-month period preceding the filing of the complaint.

Thereafter, the custodian shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00 as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

2

The Clerk of Court will be **DIRECTED** to send a copy of this memorandum and judgment order to the Warden and Trust Fund Officer at Lewisburg U.S. Penitentiary, P.O. Box 1000 in Lewisburg, PA 17837,[1] the Commissioner of the Bureau of Prisons, and the Court's Financial Deputy to ensure the custodian of Plaintiff's inmate trust account complies with the portion of the Prison Litigation Reform Act relating to payment of the filing fee.

The agency having custody of Plaintiff shall collect the filing fee as funds become available. This order shall become a part of Plaintiff's file and follow him if he is transferred to another institution. The agency having custody of the Plaintiff shall continue to collect monthly payments from his prisoner account until the entire filing fee of $350.00 is paid.

Plaintiff will also be **ORDERED** to provide the prison officials at any new institution with a copy of this order. Failure of the Plaintiff to notify the new prison officials of this order and outstanding debt, will result in the imposition of appropriate sanctions against Plaintiff without any additional notice or hearing by the Court.

## II.     SCREENING OF COMPLAINT

The Court screens the complaint to determine whether it should be dismissed as frivolous, malicious, or for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A. When performing this task, the Court bears in mind that the pleadings of *pro se* litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing

---

[1] Plaintiff has other matters pending in this district, and although he has failed to notify the Clerk's office in this case of his change of address, he has filed such notification in other cases. This is the address change contained in his most recent notification in another pending matter.

*Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, the Court construes the complaint in the light most favorable to the Plaintiff and accepts all well-pleaded allegations of fact in the complaint as being true. *Erickson v. Pardus*, 551 U.S. 89 (2007). When a factual allegation is capable of more than one reasonable inference, it must be construed in Plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997). The Court may not dismiss a complaint merely because the Court does not believe the allegations of fact set forth in the complaint. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).

The Court is not required to accept as true mere legal conclusions and unwarranted inferences of fact. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). The complaint must do more than recite bare assertions of legal conclusions without supporting allegations of material facts. *Evans v. Pearson Enterprises Inc.,* 434 F.3d 839, 847 (6th Cir. 2006). Conclusory allegations or bare legal conclusions will not suffice as factual allegations. *Followell v. Mills*, 317 Fed. Appx. 501 (6th Cir. March 18, 2009), *available at* 2009 WL 723132, *4; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (complaint must contain more than statement of facts that merely creates speculation or suspicion of a legally cognizable cause of action).

Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct.

4

1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a mere possibility that a defendant has acted unlawfully. When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" *Id.* (Internal punctuation and citations omitted).

During the screening process, the Court is mindful that where a deficiency in the complaint is able to be cured, Plaintiff shall be permitted to amend his complaint to cure such deficiency. *See LaFountain v. Harry*, 716 F.3d 944 (6th Cir. 2013) (overruling in part, *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), and holding a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA). However, a complaint must contain more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action[;]" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (citations omitted).

### III.  BACKGROUND

A summary of Plaintiff's underlying criminal case is necessary to place Plaintiff's complaint into context because his complaint is based on claims of alleged unlawful withholding of evidence and perjured testimony in the underlying criminal case. Because Plaintiff's civil complaint brought under 42 U.S.C. § 1983 requires application of the *Heck v. Humphrey*, 512 U.S. 477 (1994) favorable termination rule as to all of

5

Plaintiff's civil rights claims, the facts and procedural history in the criminal case are discussed in some detail.

Although the district courts ordinarily do not consider matters outside a civil rights complaint when deciding whether to dismiss it for failure to state a claim, *Weiner v. Klais & Co.*, 108 F.3d 86, 88-89 (6th Cir. 1999), *overruled on other grounds, Swierkiwica v. Sorema, N.A.*, 534 U.S. 506 (2002), they may consider public records and any other matters of which the court may take judicial notice under Rule 201(b) of the Federal Rules of Evidence.

In reviewing Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2), this Court takes judicial notice of the record in the underlying criminal case of *State v. Schreane*, No. E2005-00520-CCA-R3CD, 2006 WL 891394 (Tenn. Crim. App., April 5, 2006), *perm. app. denied* (Tenn. Aug. 28, 2006); underlying state post-conviction case of *Schreane v. State,* No. E2009-01103-CCA-R3-PC, 2010 WL 3919264 (Tenn. Crim. App., Oct. 7, 2010), *perm. app. denied*, (Tenn. Jan. 18, 2011), and his subsequent petition for writ of error *coram nobis*, *Schreane v. State,* No. E2012-01202-CCA-R3-PC, 2013 WL 173193 (Tenn. Crim. App., Jan. 16, 2013), *perm. app. denied,* (Tenn. May 7, 2013).

### A.     Procedural History

Plaintiff was convicted of first-degree felony murder and especially aggravated robbery by a Hamilton County Criminal Court jury and was sentenced by the trial court to life imprisonment for the murder and sixty years for the robbery, ordering the defendant to serve his sixty-year sentence as a career offender consecutively for an effective sentence of life plus sixty years.  *State v. Schreane,* No. E2005-00520-CCA-

6

R3CD, 2006 WL 891394, at *1 (Tenn. Crim. App., April 5, 2006). Plaintiff's direct appeal and state post-conviction proceedings were unsuccessful. *Id.; Schreane v. State,* 2010 WL 3919264 (Tenn. Crim. App., Oct. 7, 2010), *perm. app. denied* (Jan. 18, 2011); *Schreane v. State,* 2013 WL 5516430 (Tenn. Crim. App., Oct. 2, 2013); *Schreane v.State,* 2013 WL 6229527 (Tenn. Crim. App., Dec. 2, 2013).

B. Facts

The facts of Plaintiff's underlying criminal case are taken from the Court of Criminal Appeals decision affirming his convictions for first degree felony murder and especially aggravated robbery on direct appeal:

> This case relates to the defendant's participation in the killing of Marcus Edwards on September 19, 1991. The Chattanooga Police Department investigated the murder; however, the case went cold and remained unsolved for eight years. In 1999, the defendant was incarcerated on unrelated charges when he contacted Chattanooga Police Department detectives and told them he had information related to the unsolved 1991 murder. The detectives had the defendant brought to their location to speak with him, and after a period of a few hours, the defendant confessed.
>
> At the trial, the evidence showed that the defendant accompanied Charles Turner to the victim's place of business to help Mr. Turner commit a robbery. As the victim was talking to Mr. Turner, the defendant struck the victim with a rock, and Mr. Turner then shot the victim with a .38 caliber handgun. Mr. Turner took the victim's .357 magnum handgun, which was on the victim's body. Mr. Turner also took a cigar box containing cash and gave the defendant one hundred dollars as both men fled the scene in the defendant's 1983 Cadillac Eldorado.
>
> Before the trial, the defendant filed a motion to suppress his confession, arguing that it was taken in violation of his Fifth and Fourteenth Amendment rights. At the motion to suppress hearing, Chattanooga Police Department Detective Mike Mathis testified that he was the lead investigator for the 1991 murder. He said the victim was shot to death and found in his business. Detective Mathis said few solid leads developed until the defendant contacted them.

7

Detective Mathis said that sometime before September 19, 1999, Chattanooga Police Department Lieutenant Steve Angel had been receiving collect telephone calls from the Hamilton County Jail, which he was unable to answer. He said that the defendant's "significant other" contacted the detectives and told them the defendant wanted to talk to them about an unsolved murder. He said the defendant also called and spoke with Lt. Angel and told him enough specific information about the murder to cause Lt. Angel to have the defendant transported from the Hamilton County Jail to the police service center.

Detective Mathis said he conducted an interview with the defendant, culminating in a tape-recorded statement. He said that although the defendant was in custody on unrelated charges, he was not under arrest or charged with the victim's murder when he confessed. Detective Mathis said he did not promise the defendant anything in return for his confession. Detective Mathis said the defendant waived his constitutional right to remain silent and to an attorney before making the tape-recorded statement.

On cross-examination, Det. Mathis said he talked with the defendant for some period of time before reading him his Miranda rights. He admitted that before he arrived to interview the defendant, Lt. Angel had been talking to the defendant. Detective Mathis said that although he did not promise the defendant anything specific in return for his confession, he did explain to the defendant that he would tell the district attorney general's office that the defendant had come forward on his own and cooperated with the police. Detective Mathis admitted that he may have told the defendant he would try to help transport the defendant from the Hamilton County Jail to Silverdale, a state correctional facility.

On redirect examination, Det. Mathis said the defendant initiated the contact with the police department. Detective Mathis explained that the reason for the delay in reading the defendant his Miranda rights was the defendant initially maintained that he had only heard about the murder, not that he had any involvement in it. He said the defendant ultimately "came clean" and confessed.

The defendant testified that when he first arrived at the police service center, he was placed in an interview room with Det. Carroll and Det. Mathis. He said Lt. Angel entered the room later. The defendant said Det. Mathis told him he believed "the bicycle bandit" was responsible for the victim's murder. The defendant said that he then asked to speak with his attorney but that Det. Mathis told him he did not need an attorney. The

8

defendant said Det. Mathis made promises to him before the taping began. He said Det. Mathis promised him that the defendant would not be charged with the murder, that Det. Mathis would speak with the defendant's parole officer in another case, and that Det. Mathis would speak with the district attorney general's office in order to have them dismiss certain charges against the defendant from another case in return for the defendant's cooperation. He said Det. Mathis also promised to transfer him from the Hamilton County Jail to Silverdale. The defendant said he was transferred to Silverdale two days later. The defendant said he did not sign the waiver form until after the taped statement was made.

After considering the evidence and the arguments of counsel, the trial court denied the defendant's motion to suppress. It stated:

> Even on your motion, I can base all of my findings on what Mathis and the statement says.... The initial contact came not from the police to [the defendant] but from someone on [the defendant's] behalf and then later by [the defendant] to the police. [The police] would have been derelict in their duty not to see what [the defendant] had to say about it, something like this. So they bring him out there and talk with him.
>
> Now, as far as the requirements for Miranda warnings, you have to be in custody and subject to interrogation. He was in custody but certainly not on this and not by these officers on this. So I don't think that it actually applies in this situation.
>
> The fact that he is in custody on something else doesn't mean for Miranda purposes he wasn't in custody on this.
>
> He also made the initial contact. Certainly they questioned him after he gave them some information but I find from the transcript itself and the conversation between Mr. Mathis at the very beginning of the tape, he says, "Prior to taking this statement I advised you of your constitutional rights and did you understand these." [The defendant] says, "Yes, he did."
>
> Mathis says, "Am I correct in saying that as I started to advise you of them, you basically recited them to me, did you not?" [The defendant] said, "Yes."

9

> Mathis says, "And I mean you read-told me what your rights were without even looking at that form, you knew your rights, is that correct?" [The defendant] says, "Yes."
>
> Mathis says, "And you have signed this rights waiver agreeing to talk to us today." "Yes." "And that's your signature that I'm pointing to on this rights form." [The defendant] says, "Yes."
>
> It's incredible to believe that the rights waiver got signed after the taped statement when they discuss it prior to even questioning on the tape, so that's totally unbelievable.
>
> ....
>
> Now, I don't believe that [the defendant] walked in there, signed the waiver, and started this. I think he had probably been there a while. He probably got there before midnight and had been talking to some of them and talking to them about things and as they decided they had information they needed to use, they read him rights waiver and did the tape. There is really nothing wrong with it. He made a knowing and voluntary statement to the police. It was not made during the course of negotiations or settlement of this case. He obviously wanted good treatment and was looking out for himself, no doubt about that, that happens all the time. There was nothing improper about this. The motion to suppress the confession is overruled.

At the trial, the jury convicted the defendant as charged. The defendant filed a motion for new trial, and at the ensuing hearing, the defendant called Clyde Edwards, the victim's father, who testified that either the police or the district attorney's office told him that the state was going to offer the defendant a sentence of life imprisonment. Mr. Edwards said, "I told them I didn't care if [the defendant] didn't get but two years, as long as he didn't get out of the pen." Mr. Edwards maintained that he did not remember who told him about the proposed offer. Thereafter, the trial court denied the defendant's motion for new trial.

*State v. Schreane,* 2006 WL 891394, at 1-3 (Tenn. Crim. App., April 5, 2006), *perm.*

*app. denied* (Tenn. Aug. 28, 2006).

## IV. CIVIL COMPLAINT

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a constitutional right by a person acting under color of state law. *See AirTrans, Inc. v. Mead*, 389 F.3d 594, 598 (6th Cir. 2004). Plaintiff brings this § 1983 against Assistant District Attorney Patterson ("ADA Patterson") and Chattanooga Police Detective Mike Mathis ("Detective Mathis"), both of whom were involved in his underlying criminal case. Plaintiff specifically asserts the following claims: (1) ADA Patterson concealed material, exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and (2) Detective Mathis falsely testified during his suppression hearing and trial. Thus, the main thrust of Plaintiff's complaint is that ADA Patterson violated his due process rights when he "withheld investigation tapes of suspects, that demonstrated in detail of [sic] the crime that was committed[,] how it was committed, names of the suspects that committed the crime with the description," and Detective Mathis" committed perjury when he testified during his suppression hearing and criminal trial (Doc. 1).

### A. Claims Barred by *Heck v. Humphrey*

Plaintiff's claims that the prosecution withheld material, discoverable evidence and the detective committed perjury during the trial and prosecution of him for the September 19, 1991, murder and especially aggravated robbery of Marcus Edwards are barred by *Heck* because each claim necessarily implies the invalidity of his convictions and sentences. Under *Heck*, a plaintiff cannot pursue a § 1983 claim that, if successful, would necessarily imply the invalidity of a previous conviction or sentence, unless the

11

plaintiff can demonstrate favorable termination of the prior conviction or sentence. *Id.* at 487. The Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486-487 (footnote omitted).

Plaintiff's sentence has not been favorably terminated as required by *Heck v. Humphrey*, 512 U.S. at 486-87. Plaintiff does not allege and nothing in the record before the Court or the Court's research demonstrates he has successfully challenged his conviction and sentence.

Here, success on either one of Plaintiff's claims would necessarily imply the convictions and sentence are invalid because underlying his claims are the allegations that ADA Patterson withheld material exculpatory evidence and Detective Mathis committed perjury during his suppression hearing and jury trial, thus resulting in his illegal conviction obtained based on perjured testimony and the withholding of *Brady* material. *See Williams v. Schario*, 93 F.3d 527, 529 (8th Cir., 1996) (claim defendants presented perjured testimony was barred by *Heck's* favorable termination rule); and *Skinner v. Switzer*, 131 S.Ct. 1289, 1300 (2011) (noting *Brady* claims are outside the province of § 1983). Plaintiff's arguments, assuming they were true, would necessarily imply the invalidity of his conviction and sentence because it would have been based on

12

evidence that was fabricated and untruthful. Plaintiff's claims are precisely the type prohibited under *Heck*.

In other words, an aspect of each of Plaintiff's specific claims necessarily implies the invalidity of his convictions and sentence. Plaintiff's first claim is that his conviction was unconstitutional based on a purported *Brady* violation. Plaintiff's second claim is his statement and convictions are based on perjured testimony. Consequently, a finding in Plaintiff's favor would necessarily imply the invalidity of his conviction and sentence.

In sum, to recognize that his motion to suppress and conviction were based on perjured testimony and material evidence was unconstitutionally withheld by the prosecution would necessarily imply his conviction and sentence are invalid. Accordingly, the claims are barred by the *Heck v. Humphrey's* favorable termination rule, as relief on any of his claims would imply the invalidity of his murder and especially aggravated robbery convictions and sentences which have not been reversed or set aside.

### B. Requested Relief Barred by *Heck*

Plaintiff does not specifically request the Court to invalidate his conviction and release him from prison, even though, as previously stated, a finding in his favor on his claims would necessarily imply that his convictions and sentences were invalid. Rather, he seeks five million dollars in monetary relief. *Heck*, as extended by *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (prisoner's claim for injunctive and monetary relief not cognizable under § 1983 as it necessarily implied invalidity of good-time credits where he alleged deceit and bias on part of hearing officer), does not permit money damages

13

based on allegations that necessarily imply the invalidity of a conviction or sentence. Because awarding relief to Plaintiff on any portion of his claims would necessarily imply the invalidity of his convictions and sentences, his claim for money damages is not cognizable under § 1983.

Accordingly, because a favorable ruling would necessarily imply the invalidity of Plaintiff's convictions in direct violation of *Heck,* and Plaintiff has not had his convictions reversed, expunged, or otherwise declared invalid, his claims are not yet cognizable in a § 1983 action.

**V. CONCLUSION**

Accordingly, because Plaintiff's claims are *Heck*-barred, Plaintiff's complaint is *sua sponte* **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) (Doc. 1).

An appropriate judgment order will enter.

                */s/ Harry S. Mattice, Jr.*
              HARRY S. MATTICE, JR.
            UNITED STATES DISTRICT JUDGE